# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TIMOTHY HOBAN, | 1:10-cv-00041 AWI GSA HC |
| Petitioner, | FINDINGS AND RECOMMENDATION REGARDING PETITION FOR WRIT OF HABEAS CORPUS |
| v. | |
| K. HARRINGTON, | |
| Respondent. | |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

**RELEVANT HISTORY**[1]

Petitioner is currently in the custody of the California Department of Corrections and Rehabilitation (CDCR) following his conviction in Los Angeles County Superior Court in 1988 of first degree murder and kidnaping. Petitioner is serving a sentence of twenty-seven years to life with the possibility of parole.

Petitioner does not challenge his underlying conviction; rather, he claims the Board of Parole Hearings (Board) violated his due process rights in its 2008 decision finding him

---

[1] This information is taken from the state court documents attached to Respondent's answer and are not subject to dispute.

1

unsuitable for parole, because there was no evidence to support the finding that he currently posed an unreasonable risk of danger to the public if released.

Petitioner filed a habeas court petition challenging the Board's 2008 decision in the Los Angeles County Superior Court on February 10, 2009.  The petition was denied in a reasoned decision on May 28, 2009.  On June 19, 2009, Petitioner filed an identical petition in the appellate court.  It was summarily denied on June 30, 2009.  Petitioner then filed a state habeas petition in the California Supreme Court.  The petition was summarily denied on December 17, 2009.

Petitioner filed the instant federal petition for writ of habeas corpus on January 4, 2010.  Respondent filed an answer to the petition on March 26, 2010.  Petitioner filed a traverse on April 22, 2010.

**STATEMENT OF FACTS[2]**

The record reflects that on January 15, 1984, Petitioner and his crime partner, who were cocaine dealers at the time, handcuffed the victim and forced him into a vehicle. They drove to a remote location where they forced him to undress. Petitioner shot the victim in the head.  The victim owed Petitioner and his crime partner money from a drug debt.  Petitioner denies any involvement in the crime and claims that a witness testified against him in exchange for immunity in her own case.

**DISCUSSION**

I.   Standard of Review

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment.  Lindh v. Murphy, 521 U.S. 320 (1997), *cert. denied,* 522 U.S. 1008 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997), *quoting* Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir.1996), *cert. denied,* 520 U.S. 1107 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320 (1997) (holding AEDPA only applicable to cases filed after statute's enactment).

---

[2] This information is taken from the opinion of the superior court.

2

The instant petition was filed after the enactment of the AEDPA; thus, it is governed by its provisions.

Petitioner is in custody of the California Department of Corrections and Rehabilitation pursuant to a state court judgment. Even though Petitioner is not challenging the underlying state court conviction, 28 U.S.C. § 2254 remains the exclusive vehicle for his habeas petition because he meets the threshold requirement of being in custody pursuant to a state court judgment. Sass v. California Board of Prison Terms, 461 F.3d 1123, 1126-1127 (9th Cir.2006), *citing* White v. Lambert, 370 F.3d 1002, 1006 (9th Cir.2004) ("Section 2254 'is the exclusive vehicle for a habeas petition by a state prisoner in custody pursuant to a state court judgment, even when the petition is not challenging [her] underlying state court conviction.'").

The instant petition is reviewed under the provisions of the Antiterrorism and Effective Death Penalty Act which became effective on April 24, 1996. Lockyer v. Andrade, 538 U.S. 63, 70 (2003). Under the AEDPA, an application for habeas corpus will not be granted unless the adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d); see Lockyer, 538 U.S. at 70-71; Williams, 529 U.S. at 413.

"[A] federal court may not issue the writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." Id. at 409. Petitioner has the burden of establishing that the decision of the state court is contrary to or involved an unreasonable application of United States Supreme Court precedent. Baylor v. Estelle, 94 F.3d 1321, 1325 (9th Cir. 1996). Although only Supreme Court law is binding on the states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court decision is objectively unreasonable. See Clark v. Murphy, 331 F.3d 1062, 1069 (9th

Cir.2003); Duhaime v. Ducharme, 200 F.3d 597, 600-01 (9th Cir.1999).

II.     Review of Petition

There is no independent right to parole under the United States Constitution; rather, the right exists and is created by the substantive state law which defines the parole scheme. Hayward v. Marshall, 603 F.3d 546, 559, 561 (9th Cir. 2010) (en banc) (citing Bd. of Pardons v. Allen, 482 U.S. 369, 371 (1987); Pearson v. Muntz, No. 08-55728, 2010 WL 2108964, * 2 (9th Cir. May 24, 2010) (citing Wilkinson v. Austin, 545 U.S. 209, 221, 125 S.Ct. 2384, 162 L.Ed.2d 174 (2005)); Cooke v. Solis, No. 06-15444, 2010 WL 2330283, *6 (9th Cir. June 4, 2010). "[D]espite the necessarily subjective and predictive nature of the parole-release decision, state statutes may create liberty interests in parole release that are entitled to protection under the Due Process Clause." Bd. of Pardons v. Allen, 482 U.S. at 371.

In California, the Board of Parole Hearings' determination of whether an inmate is suitable for parole is controlled by the following regulations:

> (a) General. The panel shall first determine whether the life prisoner is suitable for release on parole. Regardless of the length of time served, a life prisoner shall be found unsuitable for a denied parole if in the judgment of the panel the prisoner will pose an unreasonable risk of danger to society if released from prison.
>
> (b) Information Considered. All relevant, reliable information available to the panel shall be considered in determining suitability for parole. Such information shall include the circumstances of the prisoner's social history; past and present mental state; past criminal history, including involvement in other criminal misconduct which is reliably documented; the base and other commitment offenses, including behavior before, during and after the crime; past and present attitude toward the crime; any conditions of treatment or control, including the use of special conditions under which the prisoner may safely be released to the community; and any other information which bears on the prisoner's suitability for release. Circumstances which taken alone may not firmly establish unsuitability for parole may contribute to a pattern which results in a finding of unsuitability.

Cal. Code Regs. tit. 15, §§ 2402(a) and (b). Section 2402(c) sets forth circumstances tending to demonstrate unsuitability for release. "Circumstances tending to indicate unsuitability include:

> (1) Commitment Offense. The prisoner committed the offense in an especially heinous, atrocious or cruel manner. The factors to be considered include:
>
> (A) Multiple victims were attacked, injured or killed in the same or separate incidents.
> (B) The offense was carried out in a dispassionate and calculated manner, such as an execution-style murder.
> (C) The victim was abused, defiled or mutilated during or after the

offense.
 (D) The offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering.
 (E) The motive for the crime is inexplicable or very trivial in relation to the offense.

(2) Previous Record of Violence.  The prisoner on previous occasions inflicted or attempted to inflict serious injury on a victim, particularly if the prisoner demonstrated serious assaultive behavior at an early age.

(3) Unstable Social History.  The prisoner has a history of unstable or tumultuous relationships with others.'

(4) Sadistic Sexual Offenses.  The prisoner has previously sexually assaulted another in a manner calculated to inflict unusual pain or fear upon the victim.

(5) Psychological Factors.  The prisoner has a lengthy history of severe mental problems related to the offense.

(6) Institutional Behavior.  The prisoner has engaged in serious misconduct in prison or jail.

Cal. Code Regs. tit. 15, § 2402(c)(1)(A)-(E),(2)-(9).

Section 2402(d) sets forth the circumstances tending to show suitability which include:

(1) No Juvenile Record.  The prisoner does not have a record of assaulting others as a juvenile or committing crimes with a potential of personal harm to victims.

(2) Stable Social History.  The prisoner has experienced reasonably stable relationships with others.

(3) Signs of Remorse.  The prisoner performed acts which tend to indicate the presence of remorse, such as attempting to repair the damage, seeking help for or relieving suffering of the victim, or indicating that he understands the nature and magnitude of the offense.

(4) Motivation for Crime.  The prisoner committed his crime as a result of significant stress in his life, especially if the stress has built over a long period of time.

(5) Battered Woman Syndrome.  At the time of the commission of the crime, the prisoner suffered from Battered Woman Syndrome, as defined in section 2000(b), and it appears the criminal behavior was the result of that victimization.

(6) Lack of Criminal History.  The prisoner lacks any significant history of violent crime.

(7) Age.  The prisoner's present age reduces the probability of recidivism.

(8) Understanding and Plans for Future.  The prisoner has made realistic plans for release or has developed marketable skills that can be put to use upon release.

(9) Institutional Behavior.  Institutional activities indicate an enhanced ability to function within the law upon release.

Cal. Code Regs. tit. 15, § 2402(d)(1)-(9)

The California parole scheme entitles the prisoner to a parole hearing and various procedural guarantees and rights before, at, and after the hearing. Cal. Penal Code § 3041.5. If denied parole, the prisoner is entitled to subsequent hearings at intervals set by statute. Id. In addition, if the Board or Governor find the prisoner unsuitable for release, the prisoner is entitled to a written explanation. Cal. Penal Code §§ 3041.2, 3041.5. The denial of parole must also be supported by "some evidence," but review of the Board's or Governor's decision is extremely deferential. In re Rosenkrantz, 29 Cal.4th 616, 128 Cal.Rptr.3d 104, 59 P.3d 174, 210 (2002).

Because California's statutory parole scheme guarantees that prisoners will not be denied parole absent some evidence of present dangerousness, the Ninth Circuit Court of Appeals recently held California law creates a liberty interest in parole that may be enforced under the Due Process Clause. Hayward v. Marshall, 602 F.3d at 561-563; Pearson v. Muntz, 606 F.3d 606, 608-609 (9th Cir. 2010). Therefore, under 28 U.S.C. § 2254, this Court's ultimate determination is whether the state court's application of the some evidence rule was unreasonable or was based on an unreasonable determination of the facts in light of the evidence. Hayward v. Marshall. 603 F.3d at 563; Pearson v. Muntz, 606 F.3d at 608.

The applicable California standard "is whether some evidence supports the *decision* of the Board or the Governor that the inmate constitutes a current threat to public safety, and not merely whether some evidence confirms the existence of certain factual findings." In re Lawrence, 44 Cal.4th 1181, 1212 (2008) (emphasis in original and citations omitted). As to the circumstances of the commitment offense, the Lawrence Court concluded that

> although the Board and the Governor may rely upon the aggravated circumstances of the commitment offense as a basis for a decision denying parole, the aggravated nature of the crime does not in and of itself provide some evidence of current dangerousness to the public unless the record also establishes that something in the prisoner's pre- or post-incarceration history, or his or her current demeanor and mental state, indicates that the implications regarding the prisoner's dangerousness that derive from his or her commission of the commitment offense remain probative to the statutory determination of a continuing threat to public safety.

Id. at 1214.

In addition, "the circumstances of the commitment offense (or any of the other factors related to unsuitability) establish unsuitability if, and only if, those circumstances are probative to

the determination that a prison remains a danger to the public. It is not the existence or nonexistence of suitability or unsuitability factors that forms the crux of the parole decision; the significant circumstance is how those factors interrelate to support a conclusion of current dangerousness to the public." In re Lawrence, 44 Cal.4th at 1212.

"In sum, a reviewing court must consider 'whether the identified facts are *probative* to the central issue of *current* dangerousness when considered in light of the full record before the Board or the Governor.'" Cooke v. Solis, 606 F.3d 1206, 1214 (9th Cir. 2010) (emphasis in original) (citing Hayward v. Marshall, 603 F.3d at 560).

A.      Last Reasoned State Court Decision

In the last reasoned decision, the Los Angeles County Superior Court rejected Petitioner's claims as follows:

> The Board found petitioner unsuitable for parole after a parole consideration hearing held on April 17, 2008. Petitioner was denied parole for two years. The Board concluded that petitioner was unsuitable for parole and would pose an unreasonable risk of danger to society and a threat to public safety. The Board based its decision on several factors, including his commitment offense.
>
> The nature of the commitment offense may indicate that a prisoner poses an unreasonable risk of danger to society when the offense is especially heinous, atrocious or cruel. (Cal. Code Regs., tit. 15, § 2402, subd. (c)(1); [Citation].) In some cases, "the nature of the prisoner's offense, alone, can constitute a sufficient basis for denying parole." [Citations.] In this case, the Board found the commitment offense to be especially heinous because it was carried out in a calculated, dispassionate manner, such as an execution-style murder. (Cal. Code Regs., tit. 15, § 2402, subd. (c)(1)(B).) After being taken to a remote location and ordered to undress, the victim was shot in the head in a manner similar to an execution. This crime was also especially heinous because the motive was very trivial in relation to the offense. (Cal. Code Regs., tit. 15, § 2402, subd. (c)(1)(E).) "To fit the regulatory description, the motive must be materially less significant (or more "trivial") than those which conventionally drive people to commit the offense in question, and therefore more indicative of a risk of danger to society if the prisoner is released than is ordinarily present." [Citation.] In this case, the motive for the murder was a drug debt. The Court finds that there is some evidence to support the Board's determination that this motive is materially less significant than those which conventionally drive people to commit murder. Therefore, it is more indicative an unreasonable risk of danger to society if petitioner is released than is ordinarily present.
>
> The heinousness of the crime is only relevant if it is indicative of the "ultimate conclusion that an inmate continues to pose an unreasonable risk to public safety." [Citation.] Therefore, the determination of whether an inmate is suitable for parole, "cannot be undertaken simply by examining the circumstances of the crime in isolation, without consideration of the passage of time or the attendant changes in the inmate's psychological or mental attitude." [Citation.] There must be a "rational nexus" between the heinousness of the commitment offense and petitioner's current dangerousness. [Citation.] The Board must look at any evidence of rehabilitation. However, "absent

affirmative evidence of a change in prisoner's demeanor and mental state, circumstances of the commitment offense may continue to be probative of the prisoner's dangerousness for some time in the future." [Citation.]

In this case, the Board found little affirmative evidence of change. The Board expressed concern that petitioner has not participate[d] sufficiently in self-help programming, particularly Narcotics Anonymous. This is troubling given that petitioner's commitment offense was drug-related. Petitioner acknowledged that he used cocaine regularly at the time of the commitment offense. He also admitted that he was involved in selling narcotics. He claims that he does not need NA or any other twelve step program or therapy because he is no longer interested in using drugs. Given his past, the Board was justified in seeking more than his own assurances that he will not relapse. Therefore, petitioner's lack of programming is some evidence that he remains an unreasonable risk of danger to society.

The Board also noted that petitioner has not participated in activities that would enhance his ability to function within the law after release. (Cal. Code Regs., tit. 15, § 2402, subd. (d)(9).) Petitioner has not received any vocational training certificates or educational advances during his incarceration. He feels that he will be very employable upon release because he has worked in several positions in prison, including computerized technical work on high-tech machinery. [Citation.] However, again the Board was not satisfied with petitioner's statements concerning his achievements and asked that he attain chronos that detail the transferability of his skills. Petitioner must demonstrate that he will be able to succeed within the law upon release. Until he does so, there is some evidence that he is still an unreasonable risk of danger to society.

(See Resp't's Answer Ex. 3.)

B.   2008 Board Hearing

As discussed by the superior court, *supra*, the Board found Petitioner unsuitable for parole at his April 17, 2008, parole consideration hearing based on the circumstances of the commitment offense, lack of sufficient substance abuse programming, and lack of documented vocational skills.

The commitment offense involved Petitioner and his crime partner kidnaping the victim, handcuffing him, taking him to a remote location, forcing him to undress, and then executing him. The Board determined the offense was carried out in a calculated, dispassionate, and execution-style manner. Cal. Code Regs., tit. 15, § 2402(c)(1)(B). Petitioner's motive for murdering the victim was an outstanding drug debt. The Board determined the motive was very trivial. Cal. Code Regs., tit. 15, § 2402(c)(1)(E).

In addition to the commitment offense itself, the Board determined Petitioner had not participated in substance abuse programming. This was particularly troubling for the Board given Petitioner was a drug user at the time, he admittedly sold drugs, and the murder was over a

drug debt. The Board stated:

> [I]t is difficult to understand why [Petitioner] has done so little to establish a firm foundation to resist the return to substance abuse, to grasp the relationship between his actions and the death of the victim. . . . His refusal to engage in substance abuse education to give him the tools to resist future temptation are found by this Panel to be further evidence that [Petitioner] remains a questionable risk, questionable and unreasonable risk to public safety, and as such, a longer period of incarceration is required.

(See Pet'r's Pet. Ex. H at 76.) This factor can be considered as it is relevant to a finding of suitability. Cal. Code Regs., tit. 15, § 2402(b).

Finally, the Board found Petitioner unsuitable for parole because he had no documented skills for employment upon release. Petitioner did not have any vocational training certificates and he had not made any educational advances during his incarceration. The Board was given no assurance that Petitioner would become employed, apart from Petitioner's own self-serving statement that he could attain employment. The Board was understandably concerned that Petitioner presented an unreasonable risk of returning to a life of crime. This factor is also relevant to a finding of suitability. Cal. Code Regs., tit. 15, §§ 2402(b), (d)(8).

After the considering the factors in favor of suitability, the Board concluded that the positive aspects of Petitioner's behavior did not outweigh the factors of unsuitability. In light of the circumstances of Petitioner's commitment offense, his lack of substance abuse programming, and his lack of documented vocational skills, the state courts' determination that there was some evidence to support the Board's 2008 decision is not an unreasonable application of California's some evidence standard, nor an unreasonable determination of the facts in light of the record. Accordingly, federal habeas corpus relief is unavailable.

Petitioner also complains he did not have a fair and impartial parole panel. Petitioner does have a due process right to a parole board that is composed of neutral and impartial decision-makers. O'Bremski v. Maas, 915 F.2d 418, 422 (9th Cir.1990) (an inmate is "entitled to have his release date considered by a Board that [is] free from bias or prejudice"). However, Petitioner's claim must be substantiated by the record. Jones v. Gomez, 66 F.3d 199, 204-05 (9th Cir.1995) ("[c]onclusory allegations which are not supported by a statement of facts do not warrant habeas relief."). Here, petitioner offers no specific factual allegations with respect to the

commissioners who presided over his hearing.  Further, neither petitioner nor his attorney objected to the presiding commissioners when given the opportunity to do so at the hearing. When asked if he had any reason to believe the panel would not be impartial, Petitioner responded, "I do not."  (See Pet'r's Pet. Ex. H at 9.)  Petitioner's claim is unfounded.

## RECOMMENDATION

Based on the foregoing, it is HEREBY RECOMMENDED that:

1. The instant petition for writ of habeas corpus be DENIED; and
2. The Clerk of Court be directed to enter judgment in favor of Respondent.

This Findings and Recommendation is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation."  Replies to the objections shall be served and filed within fourteen (14) days after service of the objections.  The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **August 27, 2010**         /s/ **Gary S. Austin**
                                     UNITED STATES MAGISTRATE JUDGE